**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **JOE HAND PROMOTIONS, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:16-CV-1890-VEH ) |
| **THE SPORTS NUT, LLC d/b/a THE SPORTS ZONE a/k/a WHISKEY CREEK BAR & GRILL and ERIC ALBRIGHT,** | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

The above-entitled civil action is before the Court on Plaintiff Joe Hand Promotions Inc.'s ("JHP") Motion for Default Judgment. (Doc. 24). JHP seeks a judgment by default against Defendants Eric Albright and Whiskey Creek Bar and Grill, LLC ("Whiskey Creek") with respect to all claims alleged in its complaint.

JHP filed the complaint in this action on November 23, 2016. (Doc. 1). JHP then filed its Amended Complaint on March 27, 2017. (Doc. 13). JHP "is a company that specializes in distributing and licensing premier sporting events to commercial locations such as bars." (*Id.* at 3). Here, JHP "held the exclusive commercial distribution rights to the broadcast of *Ultimate Fighting Championship® 197: Jones*

*v. Saint Preux* telecast nationwide on April 23, 2016." (*Id.* at 1). In its Amended Complaint, JHP alleges that the Defendants violated the Communications Act of 1934 when they aired a showing of the UFC fight in the bar one evening. (*Id.* at 2-5).

The summons and Amended Complaint were served on Albright and Whiskey Creek on April 20, 2017. (Doc. 18); (Doc. 19). On May 18, 2017, after Defendants failed to appear, answer, or otherwise defend, JHP filed two Motions for Entry of Default. (Doc. 20); (Doc. 21). The Clerk filed the Entry of Default against both Defendants on May 22, 2017. (Doc. 22). JHP filed its Motion for Default Judgment on September 29, 2017. (Doc. 24).

As support for its Motion for Default Judgment, JHP has submitted the declaration of F. Page Gamble, the attorney of record for JHP. (Doc. 24-2). The affidavit establishes that "Defendants are not infants, incompetent persons, or persons in military service or otherwise exempted from default judgment under the Service Members Civil Relief Act of 2003." (*Id.* at 1).

## II. STANDARDS AND ANALYSIS

Federal Rule of Civil Procedure 55 provides in pertinent part:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

2

**(b) Entering a Default Judgment.**

. . .

**(2) *By the Court.*** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

**(A)** conduct an accounting;

**(B)** determine the amount of damages;

**(C)** establish the truth of any allegation by evidence; or

**(D)** investigate any other matter.

FED.R.CIV.P. 55.

Because default has been entered against the Defendants, the allegations of JHP's Amended Complaint are taken as true. *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

The Court's analysis of JHP's Motion for Default Judgment involves a two-step process. First, the Court must satisfy itself that it has jurisdiction over the parties and the subject matter of the lawsuit. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (holding that district courts "always have an obligation to examine *sua sponte* their jurisdiction before reaching the merits of any claim"). Second, the Court must ensure that JHP has satisfied the elements of Rule 55 and is entitled to the default judgment it seeks. *See Nishimatsu Constr. Co v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[1] (explaining that "a defendant's default does not in itself warrant the court entering a default judgment" and that "[t]here must be a sufficient basis in the pleadings for the judgment entered").

**A.     Jurisdiction**

   **1.     *Personal Jurisdiction***

It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place,

---

[1] All decisions of the former Fifth Circuit handed down prior to September 30, 1981, constitute binding precedent on this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

The record establishes that Whiskey Creek is at home in Alabama because it conducts business from its physical location in Alabama. (Doc. 13 at 1-2). Further, Albright resides in the State of Alabama. (*Id.* at 2). Accordingly, the Court finds that it has personal jurisdiction over these parties.

### 2. *Subject Matter Jurisdiction*

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This case arises under the Communications Act of 1934. (Doc. 13 at 2). For that reason, this Court has subject matter jurisdiction.

### B. JHP is Entitled to a Default Judgment Against Defendants

Federal Rule of Civil Procedure 55(b)(2) allows the Court to enter a default judgment when the Clerk has entered default and the party seeking judgment has applied to the court for a default judgment. To determine whether the moving party is actually entitled to a default judgment, the court must review the sufficiency of the complaint and its underlying merits. *See Stegeman v. Georgia*, 290 F. App'x 320, 323 (11th Cir. 2008) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The law is well-settled that "a defaulted defendant is

deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact.'" *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (quoting *Nishimatsu*, 515 F.2d at 1206). However, the court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007).

### i. *Liability Under Section 553 and 605*

"To establish a violation of Section 605 or Section 553, Plaintiff must establish that (1) the Defendants intercepted the program, (2) Defendants did not pay for the right to receive the transmission, and (3) Defendants displayed the program to patrons of their commercial establishment." *Zuffa, LLC v. Al-Shaikh*, No. 10-00085-KD-C, 2011 WL 1539878, *4 (S.D. Ala. Apr. 21, 2011) (citing *J & J Sports Prod., Inc. v. Just Fam, LLC*, Slip Copy, 2010 WL 2640078, *2 (N.D.Ga. Jun. 28, 2010)). "To hold [a defendant] vicariously liable in his individual capacity and as an officer, director, shareholder and/or principal of [a restaurant] under 47 U.S.C. § 605, Plaintiff must show that [the defendant] had a 'right and ability to supervise the violations, and that he had a strong financial interest in such activities.'" *J&J Sports Productions, Inc. v. Arboleda*, No. 6:09-cv-467-Orl-18DAB, 2009 WL 3490859, *5 (M.D. Fla. Oct. 27, 2009) (citing *J&J Sports Productions, Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)).

The Court finds that JHP has established that it is entitled to a default judgment against Defendants on this action on both Section 553 and 605.[2] JHP pled that the Defendants intercepted the event. (Doc. 13 at 3 ¶11). JHP pled that the Defendants did not pay for the license to receive the Event. (*See id.* at 3 ¶10).[3] JHP pled that the Defendants showed the Event to patrons at Whiskey Creek. (*Id.* at 3-4 ¶11). JHP also successfully pled facts showing Albright to be vicariously liable. (*Id.* at 2 ¶3, 3-4).

### ii. *Damages*

The statute provides for damages:

**(e) Penalties; civil actions; remedies; attorney's fees and costs; computation of damages; regulation by State and local authorities**

. . .

**(C)(i)** Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

> **(I)** the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into

---

[2] "Section 605(a) of the Federal Communications Act prohibits the unauthorized third party reception of satellite transmissions intended for fee-paying subscribers." *Showtime/The Movie Channel, Inc. v. Covered Bridge Condominium Ass'n, Inc.*, 881 F.2d 983, 988 (11th Cir. 1989), *vacated on other grounds*, 895 F.2d 711 (11th Cir. 1990); *see also DIRECTV, Inc. v. Trawick*, 359 F. Supp. 2d 1204, 1207 n.6 (M.D. Ala. 2005) (noting that "all courts construing § 605(a) have assumed that the statute also applies to transmissions and interception of satellite cable programming").

[3] JHP pled that it was the sole distributor of UFC fights. (Doc. 13 at ¶7).

account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

**(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

**(ii)** In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e). JHP elected to pursue statutory, instead of actual, damages. (Doc. 24-1 at 6-8). Despite being able to ask for more, JHP asks for $5,000 under § 605(e)(3)(C)(i)(II) and $30,000 under § 605(e)(3)(C)(ii). (*Id.* at 12). This is in addition to the costs and attorneys' fees requested under § 605(e)(3)(B)(iii). (*Id.*).

### 1. Statutory Damages

The Court finds $3,150 is a reasonable damage award under § 605(e)(3)(C)(i)(II). District courts have determined this amount through varying methods:

Determining the appropriate level of damages (within the ranges

8

provided by the statute) is left to the discretion of this Court. "The Eleventh Circuit has not addressed a uniform formula for calculating damages under [S]ection 605." *McBroom*, 2009 WL 5031580 at *4. Typically, courts apply one of two methods: 1) award damages as a flat sum; and 2) other courts—"particularly those within the Eleventh Circuit" award the plaintiff "the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event." *Id.*; *Blanchard*, 2010 WL 1838067, *3 (citing *McBroom* and *Arboleda*[]). However, some courts will, "[w]hen the exact number of patrons is known ... base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court." *J & J Sports Productions v. Ribeiro*, 562 F.Supp.2d 498, 501–02 (S.D.N.Y.2008).

*Zuffa, LLC v. Al-Shaikh*, No. 10-00085-KD-C, 2011 WL 1539878, *7 (S.D. Ala. Apr. 21, 2011) (utilizing "the number of patrons approach").

In this case, the Court elects to award damages based on the license fee JHP would have received if Defendants had acquired the signal legally.[4] For that reason, the Court awards $3,150.00 in damages.

## 2. Enhanced Damages

"Under the statute, enhanced damages may be awarded when the violation was 'committed willfully and for purposes of direct or indirect commercial advantage or private financial gain.'" *Zuffa*, 2011 WL 1539878, *8. "[Broadcasting an event] without . . . authorization is enough to show a willful violation committed for the

---

[4] JHP notes that the fee for Whiskey Creek to show the Event would have been $3,150.00. (Doc. 24-1 at 10).

9

purpose of direct or indirect financial gain." *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-cv-276(CAR), 2009 WL 5031580, *5 (M.D. Ga. Dec. 15, 2009).

> In determining the amount of enhanced damages, courts consider several factors: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge." *J & J Sports Prods., Inc. v. Tu*, No. 08 C 4119, 2008 WL 4833116, at *2 (N.D.Ill. Oct.29, 2008). In connection with the above factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)[ ]." *Id.* Therefore, courts typically force the defendant to pay some multiple of the license fee. *Arboleda*, 2009 WL 3490859, at *7. Courts facing a similar fact pattern as in this case have awarded enhanced damages of three times what it would have cost Defendants to lawfully exhibit the Program. *See, e.g., Arboleda*, 2009 WL 3490859, at *7 (holding that a multiple of three was appropriate when no evidence existed of cover charge, advertisement, or repeated violations); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F.Supp.2d 498, 502 (S.D.N.Y.2008) (holding that a multiple of three was sufficient when 13 patrons were in 100–maximum capacity restaurant and no evidence existed of cover charge or repeated violations); *Kingvision Pay–Per–View Corp., LTD. v. Wright*, No. 8:06–cv–892–T–30MAP, 2006 WL 4756450 (M.D.Fla. Oct.27, 2006) (holding that multiple of three was sufficient for defendant's first known violation).

*McBroom*, 2009 WL 5031580, *5.

Given that Defendants broadcast the Event[5] without JHP's permission,

---

[5] Which JHP notes had to be unscrambled, or decoded, to be shown. (*See* Doc. 24-1 at 3-4).

ostensibly for the purpose of stimulating its own bar business and financial gain,[6] the Court finds that enhanced damages are appropriate.

In its request for enhanced damages, JHP asks the Court "to assume this is was not an isolated violation."(*See* Doc. 24-1 at 6). However, JHP neither pled nor provided any proof of other violations. And, while the Defendants may have obtained a monetary gain from showing the Event (*see id*.), they did not collect a cover charge. (Doc. 24-7 at 2). And, without a reference point to know how many people were usually at Whiskey Creek on an evening when the Event was not shown, the Court will not speculate that the 81 patrons[7] at Whiskey Creek on the date at issue came because of the Event or spent more money because of it. The Court acknowledges that the Defendants did advertise the Event on Facebook (Doc. 24-1 at 6; Doc. 24-4 at 2-3), and that JHP has explained the deleterious effects of this sort of piracy on its business. (Doc. 24-1 at 6-11). Moreover, the Court acknowledges that a purpose of enhanced damages is to deter future violations.

Having considered all these matters, the Court finds it appropriate to award enhanced damages of three times the licensing fee. Accordingly, the Court awards $9,450 in damages under § 605(e)(3)(C)(ii).

---

[6] (*See* Doc. 13 at 4 ¶13).

[7] (*See* Doc. 24-7 at 2-3).

### 3. Attorneys' Fees and Costs

Attorney F. Page Gamble's declaration states that "attorneys representing [JHP] in this action reasonably expended or will expend a minimum of six (6) hours on this litigation through the preparation of [JHP's] Motion for Default Judgment." (Doc. 24-2 at 2). Counsel for JHP also stated "[JHP] incurred costs of $400.00 to file and $192.00 to effectuate service in this action." (*Id.*). In its discretion and experience, the Court finds that six hours of attorney labor, at a rate of $250 per hour, is a reasonable amount given the complexity and procedural posture of the case. Accordingly, the Court awards JHP $1,500 in attorneys' fees and $592 in costs under 47 U.S.C. § 605(e)(3)(B)(iii).

### III. CONCLUSION

By separate order:

1. The Motion for Default Judgment of Plaintiff JHP will be **GRANTED**;

2. **JUDGMENT BY DEFAULT** will be **ENTERED** in favor of Plaintiff JHP and against Defendants Albright and Whiskey Creek; and

3. The Court awards damages to JHP in the following amounts:

Damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). . . . . . . . . . . . . . . . $ 3,150.00

Damages under 47 U.S.C. § 605(e)(3)(C)(ii). . . . . . . . . . . . . . . . . . . 9,450.00

Attorneys' Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,500.00

Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   <u>592.00</u>

**TOTAL.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **$ 14,692.00**

**DONE** and **ORDERED** this the 19th day of December, 2017.

<u>                                        </u>
**VIRGINIA EMERSON HOPKINS**
United States District Judge